So, do I get an award for this? Because have you ever had somebody argue four oral arguments at the same time in one day? I have. The DOJ attorneys often will do that. Dang, you know, has anybody done more than four though? I've never seen somebody do more than four. Anyway, but okay. I think I'll still get an award for filing one time the appeal. Again, my name is Chris Davis. I'm appearing in path of appellants, and I appreciate the opportunity to address this court. This court should be glad to hear this case doesn't involve timeliness. I think this case, I don't think anybody disputes that this is timely. This was filed on the 31st day, but the 30th day filed on a Sunday. So I don't think any of the disputes, this is timely. They do say that though that this court doesn't have jurisdiction, I assume that you want to talk about jurisdiction first too? Anyway, that this court has jurisdiction because of the sufficiency of the evidence decision. In Howard, this court recently clarified that notwithstanding the rule of hearing evidence sufficiency challenges on interlocutor appeals, this court has jurisdiction not only when plaintiff's version of the facts is blatantly contradicted by the record, but also when plaintiff's claims are premised on bare allegations unsupported by evidence. Here McNeil's arguments that he was not afforded due process fail either for lack of sufficiency of the evidence or because McNeil's version of the facts is blatantly contradicted by the auto recording of the disciplinary hearing so that no reasonable jury could believe it. Doesn't the plaintiff say that there were conversations that took place outside the audio recording? Yes, your honor, he does. He says that. Well, so if we take that in the light most favorable to the plaintiff, then your argument that he does not state sufficient evidence, how can that be? Well, first of all, he alleges something different in his complaint. But the thing is... At the qualified immunity stage, we are to assume the facts in the light most favorable to the plaintiff. But the thing is, this is also his... Sorry, your honor. His complaint is also verified, is a verified complaint, and therefore it's a declaration. And this, I think, would fall under the sham declaration rule that he's now changing his story about what's happened. Well, if we disagree with you on that, if you say he's clarifying what happened as opposed to contradicting what happened, then where are we? Then where you are is you have to listen to the tape, because he also says where this thing, where the break happened. And if you listen to the tape, there is no break. He goes from... Mr. McNeil finally states his case, then he goes... Mr. McNeil says that he finally states his case, they go out for deliberations, while the deliberations are not going on, all these things happened that supposedly defeat our case. And then he comes back and makes his decision. If you listen to the tape, I don't think there's any dispute that none of that happened. There is no break in the case. And you know why there's no break in the case? Because when there is a break in the case, which happened at the beginning when they had the witness, when he went out to go to the witness, there's another audio recording. Our process doesn't have the ability to stop and then restart with the same audio recording. That's not in the record. So whether or not they have the ability to stop and start is not in the record. It is in the record that that happened, though, Your Honor, that as soon as they stop the conversation, you have one audio recording, and then they restart with another audio recording. So it is in the record, Your Honor. So I'm a little confused as to why you're talking about, why you started here, because I thought you had an antecedent argument that there wasn't a deprivation of liberty interest that would trigger a due process right, or at least not a clearly established one. Is that your position? Yes. Yes, Your Honor. That there is no, well, that's the position for the hearing officer. Our position with respect to the other defendants is the same that it was before, that the other people didn't deprive him of anything. Well, but doesn't that apply to everybody? If there was no liberty interest and no due process right, don't all the defendants win? No, Your Honor. To violate the due process clause, you have to deprive somebody of something. So if you don't deprive anybody of anything, you don't have to provide them with anything. I mean, and that's an assault case. You're saying that there was no liberty interest is not sufficient to resolve the case for all the defendants? Yes, that's true also, Your Honor. But I just wanted to get that out first. For example, in Sandin, this court held that, rejected the claim that placing an inmate in disciplinary segregation involving solitary confinement implicated a liberty interest because there was not an atypical separation, which is what we have here. That's all they're alleging. But, I mean, so we have our decision in Brown. So maybe you could explain how this is different from Brown. In Brown, Brown made, Brown specifically held, not held, but they explained that confinement, which subjected the inmate to solitary confinement for over 23 hours a day, each day, with almost no impersonal contact, and denied him most privileges afforded by the inmate in the general population, imposed an atypical, did not impose an atypical segregation of charges because these conditions alone might apply to most solitary confinement facilities. And they said, well, if that was all that was happening, there is no liberty interest involved. But what they went on to say was that what was absent was periodic review, that he didn't have any periodic review. And that's what caused the thing to be atypical. But in this case, that's not what happened. The undisputed facts are he got repeated periodic review. And in fact, because of that periodic review, he's, his condition of confinement was reduced from 23 months to only eight months. And so it all worked out the way that the court wanted to in Brown. And what is, so Brown, I think, involved, was it 27 months? Yes, Your Honor, it's 27. In comparing this to Brown, do we look at the 23 months that were imposed or the eight months that were actually served? I think when you're looking at Brown, you have to look at the eight months because that's what he was deprived of. He was only deprived of, he was only placed in it. So that was all he was deprived of. He can't, you can't say he was deprived of more than that because that's all he ended up being deprived of was supposedly was being there in eight months. But the thing is, is what Brown said, though, was, is that, hey, it's a periodic review. And that's what they wanted to happen. They wanted, they said it's unfair for this inmate to be, not to be in solitary confinement without having periodic review to determine whether or not he should get out. And here we had it. It's undisputed that we had it. And therefore, there is no liberty interest. And even if you, this court was to find that there was a minimal liberty interest involved. For example, in the Mendoza case, this court held that a prisoner charged with smuggling drugs is only entitled to notice of the charge. Same, same type of facts in here. I just was amazed at how close this case was. It's only entitled to notice of the charges against him and an opportunity to respond. And no formal hearing is required when their liberty interest is minimal. And that's what we have here. At best, it's a minimal liberty interest. I, as I said yesterday, there's no liberty interest at all. But even if you wanted to, wanted to believe there was some liberty interest involved here, it's minimal at best. And this is all that was required. And it's undisputed in the facts that he received this. Counsel, could we go through each one of the defendants? So, Inspector Molnar was the investigator, correct? That's right, Your Honor. And was there an allegation that Molnar directed the hearing officer to find him guilty? Your Honor? Is there an allegation of that? There is a... Do we have to take that as true? Your Honor? Why not? It's, it's not an allegation. It's an argument. I don't believe there's any evidence of...  I don't believe so, Your Honor. Okay, we'll ask the opposing counsel. But if Inspector Molnar directed the hearing officer to convict Mr. McNeil, would that be personal involvement? It would be if he had any authority to do so. But he doesn't. Well, that... No, for example, Your Honor. I'll give you an example. Well, whether he had authority to do it or not, if he did that, that's personal participation. You can't say he wasn't involved if he was interjecting himself into the proceedings. Okay. So, for example, Your Honor, if you went to the hearing officer, for some reason, you know, this person had done your family wrong, and you go to the hearing officer and said, hey, you have to convict him. I'm not part of the prison system, though. I know. Well... But he is. And so, let's move to the next one. I understand what you're saying. Okay. Thank you, Your Honor. On Warden Levin and Deputy Director Byrne. So, I thought the allegation as to them was that they were aware that his due process rights were violated by not allowing him to call witnesses, and then the grievances, that was brought to their attention, and they could have rectified it. So, are you saying that assertion wasn't made? That assertion was made, but the Ramirez case says that he has no due process rights in grievance procedures, and therefore, they could not violate the due process clause. There's no right to grievance procedures? No, there's no right to due process in grievance procedures. That's the Ramirez case. But I think the argument on the other side is that they were ratifying the, I mean, if there was a violation at the hearing, that they somehow ratified that. But that's the exact same thing that happened in Ramirez. The exact same facts that are here were in Ramirez. I mean, it's unlawful. There are cases that say that ratification of a violation of the Constitution can impose liability on the ratifier. Not in due process claims. There's not a single case that says that with respect to a due process case. In fact, the Seventh Circuit said that that kind of claim was frivolous. What about the Ninth Circuit? Well, like I said, the Ramirez case is the Ninth Circuit, and the Ramirez case went against it, so that didn't apply. And the reason why is, this is the reason why, Your Honor, because due process doesn't require a result in procedures. For example, Your Honor. We know what due process requires. It requires notice and opportunity to be heard. Right. That's your right, Your Honor. And that's exactly what intercedes in these grievance procedures. Even if due process did apply to grievance procedures, which it does not. But all you're entitled to is notice and opportunity to do it. Is there an opportunity to be heard if a person is deprived of the witnesses that they want to present? Is that an opportunity to be heard? The opportunity to be heard is the opportunity to be heard in the pre-trial process. For example, Your Honor. But Wolf, doesn't Wolf say that there should be an opportunity to present witnesses and evidence as a matter of due process? It does, Your Honor. But let me give this analogy. So Your Honors are ruling on trial. At that trial, they come up to you and say, you know, I should have been able to present these witnesses and evidence at trial, but they didn't allow me to. And you come up and you say, well, we don't agree with you. We believe that the person did not, that you're not supposed to bring evidence and witnesses at trial. You didn't have the right in those particular circumstances. And so you deny this question. Well, he goes to the Supreme Court and he appeals that ruling. And the Supreme Court says, well, guess what? You know, he wasn't part of those witnesses and things. And you, and reverts to the court. Well, you didn't deny him due process because you gave him an opportunity to be heard. Even though he still didn't have his witnesses, you gave him an opportunity to be heard and you allowed him to. An analogy doesn't track to this scenario, unfortunately. So you've exceeded your time. Are there any other questions? Thank you, Your Honor. All right. We'll give you a minute for rebuttal. Just one moment to get organized, please. Are you pro bono in this case? I am. Yes, Your Honor. Well, we thank you for your pro bono service. Thank you. Quinton Weinstein with Wilkinson Stackloff representing the appellee, Mr. Michael McNeil. I just want to start by addressing a couple of Your Honor's questions that you posed to Mr. Davis. First, Judge Rawlinson, your question about the contents of the complaint. Just to read the allegation in the verified complaint as it goes to Inspector Molnar. I.G. Molnar instructed me to find you guilty on all charges. That's a quote from the complaint. We think that's definitive on that issue. Counsel, your friend on the other side says that it's undisputed that there was review of Mr. McNeil's confinement. Do you agree? We do not agree, Your Honor, that there was review of his confinement. I can't really tell from the record what review was done. I think that arguably some review was done because his confinement was reduced from the original 23 months to eight months. So how do you address the argument that the state is making on this point? Right, Your Honor. So we have a couple of different responses. What I want to start with just by clarifying my immediate response, which is there was some review that occurred. What we were getting at was Judge Miller's question earlier, that there was no review assigned to Mr. McNeil as part of the sanction he received from Inspector Glass. It's our position that the sanction he received would have implicated his liberty interest, though we believe that even if the court were to view the actual time served in confinement, that would qualify as well. As to the review itself, after about four months, there was a result of review that reduced his sentence in disciplinary segregation by about a month. And about another three months after that, it was reduced another month. And then after close to eight or nine months, apparently pursuant to no disciplinary review whatsoever, so we don't believe anything on the record suggests this occurred pursuant to any review, his segregation was just suspended. So that's sort of the factual basis. Counsel, do you take issue with opposing counsel's representation that this solitary confinement was not atypical for solitary confinements in prisons? We absolutely do, Your Honor. And so how? So there's a couple of different responses to that, Your Honor. So I'm just going to walk through them. So the first goes to his argument about Brown, which we think he's misinterpreting. Opposing counsel's argument centers that the core of Brown was that the lack of periodic meaningful review constituted a condition of confinement that implicated Mr. Brown's liberty interest. We don't think that's the correct reading of Brown. If you look at Brown, the lack of periodic meaningful review is that which created the due process violation itself. The not reviewing the conditions of his confinement for 27 months is what created the due process violation. We don't believe it's intrinsic, nor do we think it makes sense to take the due process violation and go to whether there was a liberty interest in the first place. So we disagree with his argument there that any kind of review whatsoever would counter our claim there. In addition to that, the Supreme Court has set out a couple of baseline criteria in which to assess whether disciplinary confinement or solitary confinement is comparable or atypical. One of those, the first one, is whether it's comparable to the conditions of administrative segregation. Now, opposing counsel spoke about this a lot in his brief, so I would just like to note a couple differences between disciplinary segregation in the state of Nevada at the time, as laid out in their own prison regulations, to administrative segregation. And I think the court will note that there are substantial differences. So first, someone in disciplinary segregation, this is per NDOC 733 at the time, is entitled to five hours outside a week versus someone in administrative segregation who's entitled to seven. That's a two-hour difference, and I believe when we're counting the amount of sunshine you can see in a day, the amount of hours you get to see the sun on one hand versus two, that's a significant difference itself. In addition to that, someone in administrative segregation is typically allowed normal visitation rights for those same regulations. Per Mr. McNeil's sanction, he was without visitation rights for an entire year, and for the second year of his sanction, and for the first year of his confinement, of course, he had no visitation rights whatsoever. But for the second year, assuming he would have served it, he had only behind-glass, no-contact visitation. So those are some differences. We have a set of similarities, a set of differences. We have Brown, which is 27 months. This is only eight months. What is the law that would have clearly established that there is a liberty interest and thus put the officers on notice that the sanction that actually was imposed would have run afoul of our decision in Brown? Of course, Your Honor. So we think Brown itself would establish that, because at base, we think at Brown, at a minimum, establish that there is a sufficiently long period of time where someone sentenced to administrative segregation, or pardon me, disciplinary segregation, meets that bar. But does Brown establish that eight months is over the line? We think Brown establishes that there are sufficient conditions where it would cross the line. Other cases in this circuit predating that had found sufficiently poor conditions with less time would violate that. In addition, I'd point, Your Honor, to Melnick. That's a 2021 case that was looking at conditions of confinement in the state of Nevada in 2015. And there, the plaintiff received a 36-month sanction and only served, I believe, just under 11 months, Your Honor. So we think that directly stands for the proposition that a sufficiently long sanction with extreme conditions restrictions on human contact, being able to speak and see other people, is sufficient to implicate that, particularly given those notable differences between administrative segregation and disciplinary segregation. Now, I'd just like to note a couple more differences. Can I just ask? So in Brown, it was not just the length of time, but it was also sort of the number of hours per day that the defendant was allowed no contact. So would it be appropriate to consider that similarity in this confinement, regardless of the sort of eight-month versus 23-month, that the fact of the matter is for your client, was there the same restriction on the contact for the number of hours of day? Yes, Your Honor. Mr. McNeil had no visitation rights whatsoever. And if you're asking about the specific time he spent in his cell, one, we would cite, of course, the administrative record, or pardon me, the administrative regulations that limit his ability to go outside and speak with other people to just five hours a week. And we'd also point to the district court's factual— Oh, visitation. Are you saying there was absolutely no right to visitation from those outside the prison? That's Lieutenant Glass' sanction for the first year of his confinement. Yes, Your Honor. That's on the recording. Is there anything in the record that talks about whether or not his visitation rights were restored? Nothing suggests that they were, Your Honor. And to follow up, the district court had a factual finding in its order that he was confined for 23 hours a day. And we think that's dispositive on this issue where there is record support on interlocutory review. Now, the last thing I want to touch on is, in brief, the due process issue that—or, pardon me. Well, you started off answering my questions about the personal involvement. Yes, Your Honor. Okay. Yeah, I wanted to get to the administrative reviews as well—pardon me, the grievance procedures. And they are, just like Your Honor has noted in your questioning, our theory here is not that Mr. McNeil was entitled to a specific form of disciplinary procedure, but rather that it was clearly established law in the Ninth Circuit at the time that if a prison official who reviews a constitutional violation sees those facts on the record and chooses to ratify it, and if you look at the documentation in the record where defendants Byrne and Nevins review and decide their grievance, they state that they've reviewed the record and find that there was no issues whatsoever and that they sustain that verdict. Do you think that—I mean, is your theory that there was a violation of due process, that they violated due process in their consideration of his grievance, or that they made themselves responsible for the due process violation that had already occurred? The latter, Your Honor. By ratifying it, they took on their own due process violation. Why is—I mean, your friend on the other side, I'm not sure, like, the judicial appellate analogy is exactly analogous, but they are acting in a sort of quasi-appellate capacity. And, I mean, it seems somewhat concerning to have a rule that, you know, deciding an appeal incorrectly would make you liable for something. So, Your Honor, that goes to—the Ninth Circuit has decided in Blankenhorn v. City of Orange that there are— and in, pardon me, other cases as well—Mack v. Varonis was a district court decision that cites circuit court decisions from the circuit in the appropriate timeframe that sustained due process complaints against prison officials on that theory, where the prison official was aware of the underlying issues and still chose to ratify it. And we think this is an important factor as well to address your concerns, Your Honor, where the prison official was in a position where they could have resolved the underlying issue. If you look at the timeline of the reviews, both Defendant Nevins and Defendant Brin were reviewing this complaint while Mr. McNeil was still in solitary confinement. And does—I guess this is a question of Nevada administrative law. Do they owe any deference to the initial hearing officer when they're reviewing— when they're evaluating a grievance that's complaining about how the hearing was conducted? I can't speak to the standard of review, Your Honor. I'm not familiar with that. I mean, does that make a difference? I mean, like, if it were a deferential review, then it's harder to say that they're really ratifying anything, isn't it? I mean, if, for example, all they had said was, well, we don't think he abused his discretion, then that's not really a ratification of what he did, is it? So let me give two brief responses, and I see my time's expiring. May I? But I just wanted to say that the critical point on this is all of them were part of the prison system. It wasn't like an appeal to an impartial official. We agree with that as well, Your Honor. And may I just give my brief response to Judge Miller? Thank you. We agree that perhaps there is a world in which a particular system could be created in which there would be some serious deferential review. That might itself raise its own issues that we won't get into right now, depending on other guarantees. But here, if you look at the records, both defendants say that they reviewed the record and found there to be no issue. Nor do we think there's support on the record that opposing counsel cited or anything in this that suggests that some sort of deferential review would make a difference here. Thank you. Thank you, counsel. Thank you once again for your pro bono service. Of course, Your Honor. Good bottle. I'm sure Mr. Davis can tell us about the administrative process, and I probably could too, but I won't. Is there a difference? I don't believe that there is any regulation that requires them to provide any specific deference to the things, but I may be wrong there. But that's my opinion right at this point. But the problem with that is that they had the authority to grant a new disciplinary proceeding, correct? Say that again? They had the authority to grant a new disciplinary proceeding, correct? They could, Your Honor. Yes, but if you take a look at it also, the facts of the case, if you want to look at it about giving deference, right? They also had, they could review the underlying tape just like I've asked their honors to review it. And if they come to the conclusion that none of this ever happened, right, then that's a legitimate conclusion that they could reach, and they're entitled to make that conclusion. There's no way you can hold them liable because they decided, different from your honors, that, hey, something that they didn't want to believe him on that issue. But that's not, it's not on the merits. It's on the process. So the difficulty here is if he asked for a witness to, for his defense, and that request was denied, and then he filed a grievance saying, I asked for, I wasn't able to properly defend myself. I asked for a witness, and it was denied. And they, and the reviewers said that was okay, even though it was a violation of his due process rights. That's not the merits. But that's not what happened here, Your Honor. They reviewed the tape, and they come to the conclusion that he never requested it. That's what I'm saying, that if you review the tape, you will never find a place where there's a break in the tape where he requested it. They came to the same conclusion. He requested a witness ahead of the hearing, correct? What? Did he, don't say what to me. Sorry, Your Honor. He requested the witness before the hearing, correct? No, Your Honor, he did not. And so the only evidence in the record regarding him requesting a witness is his declaration? It's his statement that he requested it when the tape wasn't going on. And so they had, they should have the ability without facing a due process challenge in the case. I also wanted to make clear, because I guess I'm way over my time, but I wanted to talk about the Melvin case and the Brown case. Briefly. The Melvin case was decided in 2021. The hearing in here was 2016. Cannot possibly have established anything clearly established. Same thing with the Brown case. The Brown case came out, and it said, it talked about, it said these conditions of confinement that he's complaining of, this HRP status, which there's no evidence in the record that he was ever on HRP status. But it says that if he was in those same kind of conditions that are HRP status, that would not be enough. It's the periodic review. And so I think you would be setting a bad decision to say, hey, you know, we can't rely on Brown saying that, hey, that's not enough. As long as we provide him with periodic review, you're going to not violate his due process rights. And that's exactly what happened here. It's undisputable based on the record that he received it, and he was reduced to sentence to eight months. And to answer your questions, once his eight months was up, he was entitled to have visitation rights. We're in the record. Can we look to show that there was a review process set up? You look at all the notes, the case notes in his thing. It talks about the review, and it talks about reducing all of it. Part of the order, though, right? No, it wasn't part of the order, but it's part of the record before this court. Got it. Thank you. All right, thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. We will be in recess until 1125. All rise. This court stands in recess.
judges: RAWLINSON, MILLER, DESAI